UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAVIER ENRIQUEZ,

       Petitioner,

v.                             Case No:  2:14-cv-85-FtM-38MRM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

       Respondents. [1]

_____/

## OPINION AND ORDER[2]

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Javier Enriquez ("Petitioner"), a prisoner presently confined at the Blackwater River Correctional Facility in Milton, Florida (Doc. 1, filed February 10, 2014). Petitioner attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court in Lee County, Florida for two counts of capital sexual

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

battery and two counts of lewd and lascivious molestation. *Id.*   Respondent filed a response to the petition (Doc. 14).   Petitioner filed a reply (Doc. 21).

Petitioner raises seven claims in his petition.   Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.   Because the petition can be resolved on the basis of the record, an evidentiary hearing is not warranted*.   See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On August 20, 2006, Petitioner was charged by amended information with four counts of sexual battery on a child less than twelve years of age and two counts of lewd or lascivious molestation (Ex. 1 at 51-52).[3]   After a jury trial, the court entered a judgment of acquittal on two counts of sexual battery, and Petitioner was found guilty on the remaining counts (T. at 317; Ex. 1 at 67-68).   Petitioner was sentenced to life in prison on the sexual battery charges and to concurrent terms of twenty-five years in prison on the lewd and lascivious battery charges (Ex. 1 at 108-110).   Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences (Ex. 6).

On October 19, 2010, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised five claims of ineffective assistance of counsel ("Rule 3.850 motion") (Ex. 8).   The post-conviction court denied all the claims (Ex. 11).   Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 13).

---

[3] Citations to exhibits or volumes are to those filed by Respondent on August 25, 2014 (Doc. 17).   Citations to the trial transcript, located in exhibit two will be cited as (T. at ____).

Petitioner filed a state habeas petition in which he raised three claims of ineffective assistance of appellate counsel.   Florida's Second District Court of Appeal denied the petition without seeking a response from the state (Ex. 16).

Petitioner filed the instant petition on February 5, 2014 (Doc. 1).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the

Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406)   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*,

134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*)*; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

## B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from

considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley*

*v. United States,* 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324).

**III.**   **Analysis**

   **A.**   **Claim One**

   Petitioner asserts that the evidence was insufficient to establish that he committed the crimes charged in counts six and seven of the information (Doc. 1 at 4).[4]   Specifically, Petitioner asserts that the testimony at trial did not support a conclusion that he touched the victim's vagina in a lewd or lascivious manner on two separate occasions. *Id.* at 7. He also argues that the information alleges that he touched the victim's vagina in a lewd or lascivious manner whereas the evidence put forth at trial indicated that he only touched the victim's vagina through her pajamas.   Petitioner raised this claim on direct appeal, and it was rejected by the appellate court (Ex. 6).

   Respondent asserts that this claim is unexhausted because, although Petitioner

---

[4] Grounds six and seven of the amended information are identical and allege that Petitioner:

> On or About or Between April 1, 2007 and May 8, 2007 in Lee County, Florida, being 18 years of age or older did intentionally touch in a lewd or lascivious manner vagina, of a person, L.O. less than 12 years of age, or forced or enticed a person, L.O., under 12 years of age to so touch the perpetrator, contrary to Florida Statute 800.04(5)(b).

(Ex. 1 at 52).

raised it on direct appeal, he did so in terms of state law only (Doc. 14 at 27).   Indeed, a review of Petitioner's brief on direct appeal indicates that he argued the merits only as a claim of insufficient evidence under Florida law (Ex. 3).   Specifically, Petitioner claimed that Florida Statute § 800.04(5)(b) provides that lewd or lascivious molestation occurs when a person "intentionally touches in a lewd or lascivious manner 'the breasts, genitals, genital area, or buttocks, *or the clothing covering them*, of a person less than 16 years of age . . .'" (Ex. 3 at 30) (emphasis in original).   However, Petitioner asserted that the information was defective because it did not include the language referencing clothing.[5]

Before a federal court may grant habeas relief, the petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b); Henderson, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.").   The prohibition against raising an unexhausted claim in federal court extends to both the legal theory of relief and to the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).   Petitioner's state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. *Duncan*, 513 U.S. at 365; *see also Pearson v. Sec'y, Dept. of Corr.*, 273 F. App'x 847 (11th Cir. 2008) (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive

---

[5] To the extent Petitioner now argues that the state courts' rejection of Claim One was based upon a misapplication of Florida law, the claim is not cognizable on habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]").

arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).

Petitioner has not alleged that some external factor impeded his efforts to raise the constitutional aspect of this claim on direct appeal. *Wright*, 169 F.3d at 703. Nor has Petitioner presented new, reliable evidence not presented at trial that would support an actual innocence claim. *Schlup*, 513 U.S. at 324.   Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order").   Consequently, Claim One is both unexhausted and procedurally barred and cannot be considered by this Court.

Even assuming that Petitioner's appellate brief exhausted this claim, Claim One fails on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").   The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979).   Under *Jackson*, federal courts must look to state law for the substantive elements of the offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012).   For federal due process review, "[t]he relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Petitioner was convicted on two counts of lewd and lascivious molestation under Florida Statute § 800.04.   This statute reads in pertinent part:

> A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious molestation.

Fla. Stat. § 800.04(5)(a) (2006).   Accordingly, to prove Petitioner guilty of lewd or lascivious molestation, the state needed to prove beyond a reasonable doubt that:   (1) the victim was under the age of sixteen; and (2) Petitioner intentionally touched the victim's breasts, genitals, genital area, or buttocks, or the clothing covering those areas. Although the "or the clothing covering them" verbiage was not included in the information, the Florida Supreme Court has specifically held that "the failure to include an essential element of a crime [in a charging document] does not necessarily render an indictment so defective that it will not support a judgment of conviction when the indictment references a specific section of the criminal code which sufficiently details all the elements of the offense." DuBoise v. State, 520 So. 2d 260, 265 (Fla. 1988).   By referencing the statute under which he was charged, the state afforded Petitioner notice of the elements of lewd and lascivious molestation.

Moreover, there was sufficient evidence to show that Petitioner violated § 800.04 on more than one occasion.   During trial, testimony was presented from the victim that Petitioner would sometimes wake her up in the mornings, get in bed with her and touch her genital area (T. at 185).   On direct examination, the state asked:

> STATE:    Do you know how many times he did that?
>
> A.    No.
>
> Q.    Was it more than once?
>
> A.    I guess so.

Id.  On cross examination, the victim testified that her sister would sometimes get into

the bed with her and Petitioner (T. at 198).    When asked how many times Petitioner had touched her when her sister was not in her bed, the victim testified, "I guess two or three." *Id.* at 199.    Despite the purported inconsistencies or equivocation in the victim's testimony, the jury chose to believe that Petitioner had committed more than one offense under § 800.04 and convicted Petitioner on two separate counts of lewd and lascivious molestation.

Given the victim's testimony, a rational trier of fact could have found the essential elements of lewd and lascivious molestation beyond a reasonable doubt.    The state court did not unreasonably apply *Jackson* in rejecting this claim, and its determination must be respected under the AEDPA.    Accordingly, in addition to being unexhausted, Claim One fails on the merits.

### B.    Claim Two

Petitioner asserts that the evidence was insufficient to support his conviction on ground three of the amended information (Doc. 1 at 8).    Specifically, he asserts that the information alleged that Petitioner's tongue had union with or was inserted into the victim's vagina whereas the victim's testimony at trial was that Petitioner put his mouth on her vagina. *Id.* at 8.    Petitioner asserts that he "should not be sentenced to life in prison when the prosecutor failed to ask the right question of [the victim] when she testified." *Id.* at 9.

Petitioner raised this claim on direct appeal, and it was rejected by the appellate court (Ex. 6).    In his brief on direct appeal, Petitioner recognized that the child victim had told the CPT interviewer that Petitioner had put his tongue in her vagina, but argued, in terms of state law only, that this hearsay statement was insufficient to support his conviction (Ex. 3 at 34-40).    Because Petitioner did not brief the constitutional dimension of this claim on direct appeal, Claim Two suffers from the same exhaustion deficiency as

Claim One.   *See* discussion *supra* Claim One.

Even assuming that Claim Two is exhausted, Petitioner has not demonstrated an entitlement to relief under *Jackson*.   The charging information for count three asserted that:

> On or About or Between March 01, 2007 and May 08, 2007 in Lee County, Florida, being eighteen years or older, did unlawfully commit a sexual battery upon L.O., a child less than 12 years of age, by inserting and/or having union with his tongue to child's vagina, contrary to Florida Statute 794.011(2).

(Ex. 1 at 51).   Section 794.011 defines sexual battery in pertinent part as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]" Fla. Stat. § 794.011(1)(h).   The state presented evidence of each element alleged in count three.

Evidence was presented at trial that the victim was either seven or eight years old at the time of the battery (T. at 174, 178).   Petitioner testified that he was 43 years old. *Id.* at 320.   Also, the victim testified that, on the same night Petitioner inserted his fingers into her vagina, he turned her "upside down" and "started putting his mouth in [her] underpart." *Id.* at 181.   A video of the victim's interview with the Child Protective Team ("CPT") was also played for the jury at trial. *Id.* at 273-301.   In the video, the victim told the interviewer that Petitioner put his tongue in her vagina. *Id.* at 289-90.[6]

---

[6] In Florida, statements of child victims of sexual abuse are not considered hearsay and may be admitted as evidence if "[t]he court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. Fla. Stat. § 90.803(23) (2006).   There was a hearing on this issue and the judge ruled that as long as the child testified, the CPT interview was admissible (T. at 271-72); Ex. 11 (transcript of child hearsay hearing at page 69) (noting that "the eight-year-old clearly meets the criteria of 803.23.").   Accordingly, the jury was allowed to consider the victim's videotaped interview as

A rational trier of fact could have found beyond a reasonable doubt that Petitioner put his tongue on or in the victim's vagina and therefore, satisfied each element of the sexual battery charge alleged in count three.   The state court did not unreasonably apply *Jackson* in rejecting this claim.   In addition to being unexhausted, Claim Two fails on the merits.

### C.   Claim Three

Petitioner asserts that the trial court committed reversible error when it denied his motion for a judgment of acquittal on counts two, three, six, and seven because the prosecution failed to prove that the crimes occurred during the time period alleged in the second amended information (Doc. 1 at 2).   Specifically, Petitioner asserts that the information provided that the crimes alleged in counts two and three occurred between March 1, 2007 and May 8, 2007 while the crimes alleged in counts six and seven occurred between April 1, 2007 and May 8, 2007. *Id.*   However, at trial, the victim was unsure of the exact dates the crimes and indicated that they may have occurred the previous fall, when she was seven years old. *Id.* at 10-11.

Petitioner raised this claim on direct appeal where it was rejected by the appellate court (Ex. 3; Ex. 6).   Petitioner did not brief the constitutional dimension of this claim on direct appeal.   Accordingly, Claim Three suffers from the same exhaustion deficiency as Claims One and Two. *See* discussion *supra* Claim One.   However, even if Claim Three was exhausted, Petitioner is not entitled to federal habeas corpus relief.

Petitioner has not identified any clearly established federal law indicating that a defendant's constitutional rights are violated by a discrepancy or error in a defendant's

substantive evidence of guilt.

charging instrument that otherwise adequately apprises the defendant of the charges against him.[7]   To the contrary, the limited case law that has addressed the subject suggests that a variance between the date alleged and the date proved will not trigger reversal as long as the date proved falls within the statute of limitations and before the return of the indictment. *See United States v. Harrell*, 737 F.2d 971, 981 (11th Cir. 1984); *United States v. Harris*, 344 F.3d 803, 805 (8th Cir. 2003) ("A variance between the date set forth in the indictment and the proof at trial is not fatal as long as the acts alleged were committed within the statute of limitations and before the date of the indictment."); *United States v. Nunez*, 668 F.2d 1116 (10th Cir. 1981) (as long as the proof relating to the time of possession fell within the statute of limitations periods, any variance between the date alleged in the indictment and the proof at trial could be disregarded); *United States v. Wilson*, 116 F.3d 1066, 1089 (5th Cir. 1997) ("A five-month variance between the date alleged and the date proved is not unreasonable as a matter of law as long as the date proven falls within the statute of limitations and before the return of the indictment"), *vacated in part on other grounds United States v. Brown*, 161 F.3d 256, 256 n. 1 (5th Cir. 1998); *Sparks v. State*, 273 So. 2d 74, 75 (Fla. 1973) ("It is not even essential that the date proved at trial be the date stated in the indictment or information.").

Thus, the state appellate court's denial of this claim was not an unreasonable application of what the Supreme Court has said on the matter. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962) (recognizing that the sufficiency of an indictment is

---

[7]  Because the date of the offense is not a substantive or essential element of any of the charged crimes, *Jackson v. Virginia* does not apply in this case.   However, the Sixth Amendment of the United States Constitution provides that the accused has the right "to be informed of the nature and cause of the accusation[.]" U.S. Const. amend. VI.

measured by whether "the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet[.]") (internal quotations omitted).   In addition to being unexhausted, Claim Three is denied on the merits.

D.   **Claim Four**

Petitioner asserts that the trial court erred when it *sua sponte* cleared the courtroom of all spectators before the alleged child-victims began to testify (Doc. 1 at 16). Petitioner argues that the clearance violated the United State Supreme Court's ruling in *Waller v. Georgia*, 467 U.S. 39 (1984) because the court did not make findings adequate to support the closure.  *Id.* at 18-19.   Specifically, Petitioner points to the following exchange during a bench conference outside the presence of the jury, just prior to the victims' testimony.   The victim at issue was nine years old at the time of trial:

|  |  |
|---|---|
| COURT: | This is a rape case, isn't it? |
| COUNSEL: | Yes. |
| COURT: | Underage child, why have you got all the witnesses back there. |
| COUNSEL: | Those are attorneys, Judge. |
| COURT: | I know, but they're not involved in the case. |
| COUNSEL: | They're just watching.   They were asked to come down by my office because they're taking over my cases when I'm gone. |
| COURT: | She's taking the cases? |
| STATE: | The first witness we're calling, the courtroom needs to be cleared. |
| COUNSEL: | There's been no motion to clear the courtroom. |
| COURT: | I don't care about the motion, I care about the children.   If you can show me the statute that |

says you can bring in everyone from your office, I'll be glad to let them stay.

COUNSEL:   Okay. But the burden is actually on the State that they should get a closed courtroom and not the other way around.

COURT:   I have certain obligations myself.  You show me where I should not close it, take a minute to look at the statute, I'll be glad not to close it. Absent that, it's going to be closed.  I've got a burden myself.

COUNSEL:   The only statute I'll be able to find is one saying the State needs to make a motion to have it closed.

COURT:   We've already got over that.  I'm going to conduct the trial whether you do it or not, I will protect you if you miss when it comes to those children.

Now – so assume I have the authority to do it, now am I required to let in anyone you want to let it, as long as they work for the public defender's office?

COUNSEL:   It could be the State Attorney's office, it could be witness management, it could be anybody.

COURT:   You're not telling me anything, ask them to leave while these two girls testify.

COUNSEL:   Your Honor –

COURT:   I'm telling you to ask them to leave.

COUNSEL:   I would prefer the Court ask them to leave as opposed to me.

COURT:   All right.   I just don't want to do it in front of the jury, but if you want me to, I will.

COUNSEL:   You don't want to send the jury out for a few minutes?

COURT:   Pardon? No. No.

COUNSEL:   Your Honor, I just don't like the –

> COURT:    I'll take care of it.   Are they the first two?
>
> STATE:    Yes.
>
> (Whereupon, bench conference concluded.)
>
> COURT:    Anyone not directly involved in this case because of the nature of the case and the requirement at this time will have to step outside the courtroom.

(T. at 167-70).   Respondent argues that there was no constitutional violation because the trial court complied with Florida law when it cleared the courtroom of the people not directly involved in the case (Doc. 14 at 34-37).   Specifically, Florida Statute § 918.16 reads in relevant part:

> [I]n the trial of any case, civil or criminal, when any person under the age of 16 or any person with mental retardation as defined in § 393.063 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause, and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at request of the victim, victim or witness advocates designated by the state attorney's office.

Fla. Stat. § 918.16(1) (2006).   Respondent acknowledges that in *Waller v. Georgia*, the United States Supreme Court recognized a presumption in favor of an open trial. However, Respondent asserts that "the Florida Legislature, in enacting [§ 916.16] took into account the *Waller* factors in narrowly tailoring the statute to provide closure of only portions of the trial and by exempting members of the press and other individuals who have an interest in the proceedings from the statute." (Doc. 14 at 36).   Respondent's argument is well taken.

The right to a public trial is guaranteed by the Sixth Amendment and incorporated against the States by the Fourteenth Amendment. *See Waller*, 467 U.S. at 39.   In *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 609 n. 22 (1982) the

United States Supreme Court recognized that Florida Statute § 918.16, provides "for mandatory exclusion of general public but not press during testimony of minor victims." 457 U.S. at 609 n. 22.   The Court wrote, "Of course, we intimate no view regarding the constitutionality of [this statute]." Id.   Accordingly, there does not appear to be a Supreme Court case expressly addressing the constitutionality of statutes that require partial closure of a courtroom when minor victims of sexual abuse testify.

Although the Supreme Court has determined that a defendant's right to public trial is not absolute, there is a "presumption of openness." Press–Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 505 (1984).   To overcome this presumption and justify closing the courtroom to the public during a criminal proceeding, four elements must be satisfied: (1) the party seeking to close the proceedings must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure. Waller, 467 U.S. at 48.   These four Waller factors must be considered on a case-by-case basis, because even a compelling interest such as "safeguarding the physical and psychological well-being of a minor" cannot "justify a mandatory closure rule." Globe, 457 U.S. at 607–08 (emphasis omitted).

The court's concern with protecting young victims of sexual abuse is a compelling interest of the State, satisfying the first Waller factor. See Clements v. State, 742 So. 2d 338, 341 (Fla. 5th DCA 1999) ("The Legislature, by enacting section 918.16, has found that there is a compelling state interest in protecting younger children or any person with mental retardation while testifying concerning a sexual offense."); United States v. Yazzie, 743 F.3d 1278, 1287 (9th Cir. 2014) ("ensuring a child victim's ability to effectively

communicate is [ ] a compelling higher value that can justify a closure."); *Bell v. Jarvis,* 236 F.3d 149, 168 (4th Cir. 2000) ("[T]he state demonstrated an over-riding, compelling interest in protecting a child victim from the embarrassment and trauma associated with relating the details of multiple rapes and sexual molestation by a family member, meeting the first *Waller* requirement[.]"); *Maryland v. Craig,* 497 U.S. 836, 851 (1990) ("[A] State's interest in 'the protection of minor victims of sex crimes from further trauma and embarrassment' is a 'compelling' one.").

The second *Waller* factor is also satisfied.   Unlike the situation in *Waller,* where the trial court closed the courtroom for the entire seven-day suppression hearing without considering the specific need for privacy, here all portions of the trial other than the minor witnesses' testimony were public.   Because people who were involved in the case were explicitly allowed to remain in the courtroom, and because the closure was only during the two victims' testimony, the partial closure was narrowly tailored to the interest of protecting the two young children who testified. *See Bell,* 236 F.3d at 168 (Because the compelling interest for closing the courtroom was the protection of the victim during her testimony about petitioner's repeated sexual assaults of her, limiting the closure to her testimony was imminently tailored to serve that interest.).

As to the third *Waller* factor, the trial court appeared to believe that it was required by law to close the courtroom during the children's' testimony.   However, the court specifically asked defense counsel to "assume" that he had discretion to keep the courtroom open, and asked whether he was required to allow everybody into the courtroom (T. at 168-69).   Counsel argued that the court was indeed, required to do so. *Id.* at 169 (arguing that the court was required to allow "anybody" in the courtroom). While a court must "consider alternatives to closure even when they are not offered by

the parties[,]" *Presley v. Georgia*, 558 U.S. 209, 214 (2010), *Waller* makes clear that trial courts need consider only "reasonable alternatives" that are more narrowly tailored and more protective of constitutional rights than the closure advocated by the government. For instance, instead of closing an entire hearing, a trial court should consider the reasonable alternative of "closing only those parts of the hearing that jeopardized the interests advanced," *Waller*, 467 U.S. at 48.   Closing only part of the hearing is precisely what the trial court did in this case.   The alternative advanced by defense counsel (to allow everyone to stay in the courtroom without limitation) was, in effect, no alternative, and even in the instant petition, no reasonable alternative has been advanced by Petitioner.[8]

Finally, the trial court made findings to support the closure. The court specifically queried as to the nature of the case, noting that he cared about the children, and asked that the courtroom be cleared of those not directly involved in the case.   Although the

---

[8] In *Presley*, over defense objection, the courtroom was closed during juror voir dire to the single member of the public present in order to better accommodate the large number of prospective jurors.   Noting that "[n]othing in the record shows that the trial court could not have accommodated the public," the Supreme Court pointed out obvious alternatives that were available and should have been considered *sua sponte* by the trial court. *Id.* at 725.

How *Presley* applies when a child testifies at a criminal trial is far from clear.   Prior circuit court decisions have concluded that a trial judge is <u>not</u> required to consider *sua sponte* alternatives to a temporary closure for the testimony of one witness, giving reasons that were not implicated by the jury voir dire in *Presley*. *See Bowden v. Keane*, 237 F.3d 125, 131 & n. 3 (2d Cir. 2001) ("Once he has ordered a narrow closure, a trial judge simply has no responsibility to assess other alternatives *sua sponte*"); *Bell v. Jarvis*, 236 F.3d 149, 170 (4th Cir. 2000) ("the trial judge is not in a superior position to suggest alternatives which may be more acceptable to the defendant and his counsel"); *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997) ("we do not believe that the Supreme Court [in *Waller*] wanted trial judges selecting the alternative of limited closure to consider further alternatives that themselves pose substantial risks to a fair trial for the defendant").

trial court did not expressly state that the partial closure was necessary to facilitate the children's testimony, its findings are clear in context. *See United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994) ("specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record").

Fair minded jurists could conclude that the trial court's rulings complied with the factors set forth in *Waller* and that the court closure during the children's testimonies did not violate Petitioner's Sixth Amendment right to a public trial.   Accordingly, Petitioner is not entitled to habeas relief on Claim Four.

## E.    Claim Five

Petitioner asserts that defense counsel was ineffective for failing to ensure that the jury was read the charging information after having been sworn (Doc. 1 at 19).   Petitioner asserts, without legal support, that "counsel had an absolute obligation to ensure that the jury be read the charging information and to request that the jury be provided a copy thereof." (Doc. 1 at 20).   Petitioner claims he was prejudiced because, "the jury was free to speculate whatever date was provided." *Id.*

Petitioner raised this claim in his Rule 3.850 motion, and it was denied by the post-conviction court:

> In the first allegation, Defendant alleged that trial counsel was ineffective for failing to ensure that the jury was read the actual Information and provided a copy of the Information for deliberation.   Defendant further alleged that without the reading of the Information, the jury was free to speculate as to whether the trial testimony supported the crimes charged against Defendant.   However, this allegation is without merit. An indictment or information is not evidence against an accused, but, rather, is the means by which the State charges that a crime has been committed. *Dougan v. State*, 470 So. 2d 697, 701 (Fla. 1985).   Furthermore, the Court in its discretion may decide whether a copy of the information containing the charges against the defendant be provided to

the jury during deliberation. Fla. R. Crim. P. 3.400(a)(1) (West 2008). In this case, the record showed that the Court informed the jury of the charges against Defendant. Furthermore, the Florida Supreme Court has held that in regards to sexual battery cases, time is not a substantive part of the charging document and that there properly could be a variance between the dates proved at trial and those alleged in the information. *Tingley v. State*, 549 So. 2d 649, 650 (Fla. 1989). Therefore, counsel could not have been ineffective for failing to raise a meritless issue. *See Teffeteller v. Duggar*, 734 So. 2d 1009 (Fla. 1999).

(Ex. 11 at 2-3) (internal citations to the record omitted). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 13). A review of the record supports the state courts' adjudication of this claim.

First, as discussed in Claim Three *supra* and properly noted by the post-conviction court, the date of the victim's molestation is not a substantive element of sexual battery or lewd and lascivious molestation. *See Tingley v. State*, 549 So. 2d 649 (Fla. 1989). Next, the Florida Supreme Court has specifically held that the only purpose of an indictment or information is to apprise a <u>defendant</u> of the charge against him. *Dougan v. State*, 470 So. 2d 697 (Fla. 1985) ("An indictment or information is not evidence against an accused, but, rather, is nothing more or less than the vehicle by which the state charges that a crime has been committed."); *Gould v. State*, 974 So. 2d 441, 446 (Fla. 2d DCA 2007) (recognizing that an information "is nothing more or less than a charging document."); *Foster v. State*, 778 So. 2d 906 (Fla. 2000) ("[T]he charging information reflected nothing more than mere charges, not evidence, against [the defendant]."). Given that there was no evidentiary value in the information, reasonable counsel could have decided against asking the trial court to read the second amended information to the jury or to allow a copy of thereof to be taken into deliberation.

Finally, the trial court properly instructed the jury that its verdict "must be based

solely on the evidence or the lack of evidence and upon the law.   Please remember the information, as I told you before, is not evidence and is not to be considered by you as any proof of guilt." (T. at 157, 371) ("It is to the evidence introduced upon this trial and to it alone that you are to look for [] proof.").[9]   Accordingly, Petitioner cannot demonstrate prejudice because the jury would not have considered the information as evidence even had it been apprised of its contents. *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").

Petitioner has demonstrated neither deficient performance nor resulting prejudice. Accordingly, Claim Five is denied pursuant to 28 U.S.C. § 2254(d).

### F.   Claim Six

Petitioner asserts that defense counsel was ineffective for failing to move for a bill of particulars to clarify the dates of the alleged sexual battery (Doc. 1 at 24-25). Petitioner claims that he suffered prejudice from counsel's failure because he was unable to prepare an alibi defense to the charges. *Id.*   Petitioner also argues that counsel's failure to move for the bill of particulars allowed "evidence of multiple sexual batteries that were uncharged in the information" to be admitted at trial. *Id.* at 25.[10]

Petitioner admits that this claim is unexhausted, but argues that his procedural default is excused under *Martinez v. Ryan* (Doc. 21).   In *Martinez v. Ryan*, 132 S. Ct.

---

[9] The trial court properly instructed the jury as to the elements of sexual battery (T. at 366-69).

[10] Counsel filed a motion in limine to address the second issue and a hearing was held on the motion which was ultimately denied. *See* Ex. 1, Supp. 1.   As such, Petitioner's argument that counsel was ineffective for failing to argue against the inclusion of testimony implicating Petitioner in prolonged sexual abuse of the victim is refuted by the record and will not be further addressed by the Court.

1309 (2012), the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. [11]   Even under *Martinez*, however, Petitioner must establish that his underlying ineffective assistance claim is "substantial" before the default will be excused. *Martinez*, 132 S. Ct. at 1318-19.   He has not met this requirement; Petitioner has failed to show that his underlying ineffective assistance claim is substantial – that is, that it has "some merit." *Id.* at 1318.

"The purpose of a bill of particulars is merely to give the defendant notice of the particular acts relied upon by the state to establish the crime charged, that the defendant may be fully advised of the nature and cause of the accusation against him, and that he may have an opportunity to prepare his defense." *Middleton v. State*, 76 So. 785, 787 (1917).   The Florida Rules of Criminal Procedure require an information to state as accurately as possible the time and place of the commission of the offense charged. Fla. R. Crim. P. 3.140(d)(3).   Counsel can move for a statement of particulars if the time and date stated are too indefinite for counsel to prepare a defense. Fla. R. Crim. P. 3.140(n).

Petitioner speculates that he could have cobbled together an alibi defense had counsel moved for a bill of particulars.   However, he has presented this Court with no evidence of an alibi defense for the dates at issue other than that already argued at trial.

---

[11] In 2013, the Supreme Court confirmed that the *Martinez* ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).

Vague and conclusory allegations are insufficient to support a claim for habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel); *Gonzalez v. Knowles*, 515 F.3d 1006, 1014-16 (9th Cir. 2008) (claims "grounded in speculation" do not establish prejudice under *Strickland*); *Sargent v. Armontrout*, 841 F.2d 220, 226 (8th Cir. 1988) ("When seeking habeas relief, the burden is on the petitioner to prove that his rights have been violated. Speculation and conjecture will not satisfy this burden").

Moreover, Petitioner does not explain how counsel's failure to request a bill of particulars prevented him from presenting an alibi defense.  He could have (and did) argue that he was not living at the victim's house during the alleged dates of the crimes. Finally, Petitioner was not "surprised" by the victim's testimony at trial.   The victim expanded the potential dates of the offenses in her deposition, which occurred at least two months before Petitioner's trial. *See* Ex. 1, Supp. 1 at 242 (discussing the victim's deposition at a pre-trial hearing); *Damron v. Florida*, No. 8:07-cv-2287-T-30TBM, 2009 WL 1514269 (M.D. Fla. May 29, 2009) (statement of particulars would not have made a difference in preparing a defense where the victim described incidents of sexual battery, including approximate dates, in a deposition before trial).

Finally, defense counsel stressed to the jury during closing argument that the victim's testimony and the testimony of the victim's mother did not make sense because the testimony of both witnesses was inconsistent:

> [The victims' mother] told you that Javier was not living in the home at the time these allegations were to have occurred. She told you that they had not gotten back together, that he would stop by sometimes and say hi.

And then she tried to change her story on the stand and say, "oh, no.   He would come over sometimes and he would spend the night and he would wake the girls in the morning." That's the first time she's ever said anything like that.

As the state keeps saying, 18 months later she decides he used to come over and spend the night, because in order to have committed these allegations he has to have had spent the night.

It doesn't make any sense with the way the story had always gone before that, which was, "We separated January of 2007 and we never got back together.   He never moved back in. He wasn't in the house."

The judge will read you some instruction a little bit later, and one of those instructions is going to be that, "A reasonable doubt may arise from the evidence, conflict in the evidence or the lack of evidence." And that's an important instruction because we have all of this in this case.

There are conflicts in the evidence.   The dates that Nichole spent – or that Luz spent, this actually occurred. When was it?   In the video she says the last time was April 10th.   That was just a day or two before the video.   And that was in her room

When she testified she said that the last time Javier touched her was in August or November, and that she says was this incident about watching the movie and then going into the bathtub.   She was very clear that that was the last time that he had ever touch[ed] her.

In the video that incident supposedly happened after Easter. She was very convinced of the dates on both of these occasions, or at least the time frame.   Nobody's asking her to say an exact date, but at least a consistent time frame should be expected even of a seven year old. This is something she says happened to her which was very traumatic.   She's going to remember when it happened.

She talked to somebody about it shortly after it happened. She said when it happened.   And then now she comes in here and gives a completely different version of when it happened.

In the video she said she was eight years old when that happened.   That means it happened after January of 2007.

That means it happened after Javier wasn't even living in the home.   When she came in here to testify she was convinced it happened when she was seven years old.   Which is it? That's a conflict in the evidence.

. . .

According to her, most of these allegations happened in the morning after Javier moved out of the house and wasn't living there.   He wasn't staying there.   You heard him testify, he didn't stay there after he moved.   The first time [the victim's mother] ever said that he stayed there was in this courtroom. She had a year and a half to come up with that and say, "Well, he can't molest my kids if he's not staying in my house, so he has to have been staying in my house at the time.   So I have to tell the jury that."

(T. at 357-59).   Reasonable defense counsel could have strategically decided that forcing the state to file a bill of particulars would eliminate counsel's argument that the witnesses' inconsistent testimony should result in reasonable doubt.   *See Castillo v. Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

Petitioner cannot prove *Strickland* prejudice because the record does not establish that the outcome of the proceeding would have been different had counsel asked for a bill of particulars.   Moreover, Petitioner cannot demonstrate that counsel's failure to move for a bill of particulars was not based upon trial strategy.   Therefore, Petitioner has satisfied neither *Strickland* prong. Claim Six is not "substantial" so as to excuse the procedural default of this claim.

Claim Six is dismissed as unexhausted and procedurally barred.   Alternatively, it is denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

### F.      Claim Seven

Petitioner asserts that trial counsel was ineffective for failing to raise a double jeopardy claim as to the two counts of sexual battery and two counts of lewd and lascivious acts (Doc. 1 at 26).   Specifically, Petitioner argues that "[g]iven the vague pleadings of the charging document and the indistinct and contradictory testimony of the alleged victims in this case, it appears that the Lewd and Lascivious Acts derived from the same incidents as the Sexual Battery Acts." *Id.* at 27.

Petitioner admits that this claim is unexhausted, but argues that his procedural default is excused under *Martinez v. Ryan* (Doc. 21).   Respondent asserts that *Martinez* cannot excuse Petitioner's failure to exhaust this claim because each of the counts involved distinct and separate criminal acts:

> Here, the sexual battery counts were predicated on Enriquez digitally penetrating the victim's vagina and his mouth having union with the victim's vagina.   The lewd and lascivious molestation charges involved separate acts of touching of the victim's vagina.   There is no double jeopardy concern because these acts are of a distinct character and type. Counsel cannot be deemed ineffective for failing to raise a non-meritorious issue.

(Doc. 14 at 50).   Accordingly, argues Respondent, Petitioner has not shown that this ineffective assistance claim is substantial so as to warrant review under *Martinez. Id.* The Court agrees.

The United States Constitution contains a double jeopardy clause designed to prevent a person from receiving multiple punishments for the same criminal offense. *Valdes v. State*, 3 So.3d 1067, 1069 (Fla. 2009) (citing U.S. Const. amend. V; Art. I, § 9). However, there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal episode where, as in the instant case, "the

offenses are predicated on more than one distinct act." *Sanders v. State*, 101 So. 3d 373, 374 (Fla. 1st DCA 2012).

Here, Petitioner was convicted of two counts of sexual battery.   The information and jury verdict demonstrate that Petitioner's convictions were predicated on two distinct acts: inserting his fingers into the victim's vagina and placing his tongue on or into the victim's vagina (Ex. 1 at 51).   Evidence was presented at trial that Petitioner digitally penetrated the victim and subsequently performed oral sex on the victim on the same evening. *See* discussion *supra* Claim Two; (T. at 176, 179, 181).   Because the Florida sexual battery statute may be violated in multiple, alternative ways, convictions for "sexual acts of a separate character and type requiring different elements of proof" do not violate double jeopardy because the acts are "distinct criminal acts that the Florida Legislature has decided warrant multiple punishments." *State v. Meshell*, 2 So.3d 132,135 (Fla. 2009); *see also Saavedra v. State*, 576 So.2d 953, 956-58 (Fla. 1st DCA 1991) ("[T]he fact that the same victim is sexually battered in the same manner more than once in a criminal episode by the same defendant does not conclusively prohibit multiple punishments.").

Petitioner was also convicted of two counts of lewd and lascivious molestation. Similar to the sexual battery statute, the lewd or lascivious molestation statute also provides multiple, alternative ways to violate the statute. Thus, the acts proscribed by the lewd or lascivious molestation statute are distinct criminal acts that warrant multiple punishments. *See Roberts v. State*, 39 So.3d 372, 374 (Fla. 1st DCA 2010).   The charges for lewd and lascivious molestation were predicated upon Petitioner touching the victim's vagina in a lewd or lascivious manner on separate occasions. *Id.* at 51-52. Evidence was presented at trial of at least two separate occasions of lewd and lascivious

molestation when Petitioner touched the victim's vagina through her pajamas. *See* discussion *supra* Claim One.

Because each conviction was predicated on distinct acts, reasonable counsel could have concluded that making an objection on double jeopardy grounds would have been futile.  Accordingly, counsel was not ineffective for failing to make such motion. Petitioner has not shown that Claim Seven is "substantial" so as to excuse his procedural default of this claim.   Claim Seven is dismissed as unexhausted and procedurally barred. Alternatively, it is denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[12]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003).

---

[12]   Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Reasonable jurists could find the Court's assessment of Claim Four debatable or wrong.   Specifically, reasonable jurists could conclude that the trial court failed to adequately address the third and fourth prongs of the four-pronged *Waller* test for courtroom closure. *Waller v. Georgia*, 467 U.S. 39, 48 (1984).   Accordingly, Petitioner will be granted a certificate of appealability as to this claim.   Petitioner has not made the requisite showing on the remaining claims, and a certificate of appealability is denied on Claims One, Two, Three, Five, Six, and Seven.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Florida Attorney General is **DISMISSED** as a named Respondent.

2.      Claims One, Two, Three, Six, and Seven of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Javier Enriquez are **DISMISSED**; alternatively, these claims are **DENIED**.   Claims Four and Five are **DENIED**.

3.      Petitioner is **DENIED** a certificate of appealability as to Claims One, Two, Three, Five, Six, and Seven.   Petitioner is **GRANTED** a certificate of appealability as to Claim Four.

4.      The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 13th day of August, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: OrlP-4
Copies: All Parties of Record